(62 Misc. Rep. 546.)

FLETCHER v. BANKERS' LIFE INS. CO. OF CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. March, 1909.)

1. INSURANCE (§ 291*)—LIFE INSURANCE—APPLICATION—CONSTRUCTION.

An applicant for a life insurance policy, instead of being required by the examiner to answer specific questions in the application, signed a statement written by the examiner across the blank questions which were identical with those answered on a previous examination by the same examiner for insurance in another company. The statement asserted that the answers on such previous examination "still held good, and are valid in regard to this examination." *Held*, that such statement was a reiteration of the truth of the statements given on the prior examination, and the words "there is no change from last examination" did not mean that each question was read and answered.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 681; Dec. Dig. § 291.*]

2. INSURANCE (§ 291*)—APPLICATION—WARRANTIES.

Where, on an application for a life insurance policy, the applicant signed a statement written across the face of it by the medical examiner who had examined him for insurance in another company that the statements made on the previous application still held good, it was not a warranty which would avoid the policy because subsequent to the prior examination applicant suffered from acute gastritis and heart weakness.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 681; Dec. Dig. § 291.*]

Action by Louise Fletcher against the Bankers' Life Insurance Company of the City of New York. Verdict for plaintiff. Motion to set aside denied, and judgment for plaintiff.

Ferguson & Ferguson, for plaintiff.
Van Schaick & Brice, for defendant.

GREENBAUM, J. The defendant relies upon a breach of warranty arising from alleged statements made by the insured at the time of his application for the policy of life insurance. It appears that about 11 months prior to the time when the application for the policy in suit was made the insured had been twice examined upon an application for a policy of the Life Association of America. Upon the prior application one Dr. Chamberlain was the medical examiner, and the usual considerable number of printed questions had been specifically answered by the applicant and signed by him. The same medical examiner, Dr. Chamberlain, called at the residence of the insured in reference to his application to defendant company, and, instead of hav-

---

ing the insured make specific answers to the numerous questions printed in the application blank, as on the previous occasion, the examiner wrote diagonally across the list of blank questions, which were identical in form with those on the application made to the Life Association of America, the following words:

- "The applicant asserts that the statements made in examination for policy No. 4937 in the Life Asso. of America on July 28, 1905, and again on Aug. 1, 1905, still hold good and are valid in regard to this examination. There is no change from last examination of August, 1905, except the insurance taken in the Metropolitan Life Co."

The signature of the insured appears below the words quoted. Among the printed questions on both blanks were the following:

"(11) How long since have you consulted a physician? For what disease? Give name and residence of such physician.

"(12) Has any physician ever given an opinion that you were not safely insurable?

"(13) Have you ever had any disease of the heart?"

It is not claimed by the defendant that any of the answers made on July 28, 1905, and August 1, 1905, were incorrect, excepting one, which is hereafter discussed, but it was established on the trial that on September 30, 1905, the insured was taken ill at Olean, N. Y., with acute gastritis and heart weakness; that he was confined to a hotel at Olean for about three weeks and attended daily for several days by a physician; and that he thereafter put in a claim for 10 weeks' disability in the New Amsterdam Casualty Company and was paid $250. The construction to be given to the words written across the set of blank questions and answers which were not specifically answered must determine whether there was a breach of warranty. The first portion of the writing evidently was intended as reiteration of the truth of the answers given on the prior examinations, and unquestionably, if it had been shown that any of the answers previously given by the insured were incorrect, there could be no recovery under the policy.

But it is argued that the words, "there is no change from last examination of August, 1905, except the insurance taken in the Metropolitan Life Co.," indicate that the insured, in fact, stated, and therefore warranted, that he had not consulted any physician since the prior application, and that he had not since suffered from any heart disease. Precisely what is meant by "no change from last examination" is by no means clear. Did it mean that the applicant's general physical condition had not changed, or that there was no change to be made in any answer, so that each question was to be deemed answered separately precisely as the previous set of questions had been answered? If the former, it was either the record of the opinion of the medical examiner after some possible investigation made by him concurred in by the applicant, or the opinion of the insured. An opinion of the insured that his physical condition had not changed would not constitute a warranty if the opinion was a truthful one. If the language above quoted was intended to be deemed equivalent to an answer to each separate question, precisely as given in the prior application, that conclusion must result from clear and unequivocal words. There is no proof that the previous questions and answers

were before the parties, and it would be straining a point sorely to hold that the insured had in mind every question previously answered. It will not do to surmise that the statement as signed meant that each question was read and answered as before.  Dr. Chamberlain could have readily had answers written to each question, as he had done previously, and it is evident that in view of the comparatively short time that had elapsed since the previous application was signed the doctor contented himself with procuring a general statement that the answers theretofore made were again acknowledged as correct, with the additional statement that "there was no change from last examination."  It is well settled that a condition precedent or warranty may not be predicated upon uncertain phrases or ambiguous expressions. Dineen v. General Accident Ins. Co., 126 App. Div. 167, 110 N. Y. Supp. 344; Fitzgerald v. Sup. Council, 39 App. Div. 251, 56 N. Y. Supp. 1005; Tooker v. Security Trust Co., 26 App. Div. 372, 49 N.: Y. Supp. 814.  Thus tested, and having in mind that the illness from which the insured suffered at Olean apparently was of a temporary nature, it cannot be said that there was any breach of warranty or any fraud on the part of the insured.  Valentini v. Metropolitan Life Ins. Co., 106 App. Div. 487–492, 94 N. Y. Supp. 753.  There was also evidence adduced by the defendant tending to show that the deceased had been rejected as not insurable when examined by the physicians of the Mutual Reserve Life Insurance Company on July 21, 1905. The testimony on this branch of the case is very unsatisfactory, and leaves one under the conviction that this medical examiner, at most, told the applicant that he was postponed for further examination.  A record to this effect appears upon the application, and the circumstances do not indicate that the insured knew that he had been rejected as not insurable.  A verdict is directed for the plaintiff for the sum of $2,548.37.

Judgment for plaintiff.